JufrGE Mills
delivered the opinion.
Joshua Cates, holding the elder patent 6f a seminary *203 claim, thereon obtained a judgment in ejectment iq the court below, against George Loft as. To be relieved against this judgment, Loftus fiied his bill and obtained an injunction, and set up a certificate from the county court with a junior patent, as the superior equity. The certificate on which lie relies, is as follows:
u Christian county court, July term, 1804.
No. 2010,
Isaac Larue is entitled to four hundred acres of land, by virtue of having settled the same agreeably to an act of assembly, and located as follows, to wit:
Isaac Larne enters 400 acres of land in Christian county, on Little River; beginning at a post oak, and running so as to include the land, where the road that leads from Abner Bogarth’s to the Cany Bend of Little River, crosses the road that leads from Jacob Rrunk’s to Earle’s miU, including the said cross-roads in the centre.”
This certificate was granted previous to the commencement of Cates’ claim, and1 was assigned by Isaac Larue to Jabez Larue, and by him to Loftus, in whose name it was surveyed in 1808, and a patent obtained in the succeeding year.
The validity of this claim is contested by the answer of Cates on many points, and particularly on the ground, that Isaac Larue, to whom the claim was granted, had obtained from the same county court, a previous certificóte, under the same, act of assembly, for 400 aeres of land, which he exhibits in the words following:
“Christian county court: November term, 1803.
No. 1&96.
Isaac Larue is entitled to 400 acres of land, by virtue of his having settled the same agreeably to an apt of assembly, and located as follows:,
Isaac Larue enters 400 acres of land in Christian county, on the south side of Cumberland River; beginning at the upper end of a military claim, running up the riyer binding on the state line, running so as to include the itn-provement.”
The certificate set up by Loftus in bis bill, bad been surveyed to include the cross-roads named in the entry, hi the centre of a square with lines to the cardinal points. And be has, by proofin this cause, sustained, beyond doubt, the notoriety of the two roads called for in the certificate which fie relies on, and also their intersection. The court *204 below sustained his claim as valid, and decreed to him a conveyance from the defendant, and a perpetual injunction. To reverse this decree, Cates has appealed. It has been contended on the part of Cates, that the granting cf tbe prior certificate to Isaac Larue for 400 acres, is conclusive against the validity of the second certificate; for thq law allowed of but one certificate to one and the same person.
Two certi-Unds* under tbe act disposing-r-f the ofCtbe Commonwealth granted in name'will be taken astn v jngbe’ngran-ted to t!te unless tbe ’ con’rary is shewn.
To this point, the attention of tbe court has been jirst drawn. For it is evident that if this be against tbe appel-lee, it precludes the necessity of further enquiry into tbe validity of his claim.
To avoid the effect of this defence, set up in the answer 0f Cates, the appellee made a special replication, alleging Riat “there were three persons of tbe name ot Isaac Larue”; and be relies on the law giving the county courts exclusive powers of judging as to settlement, and tbe persons proPer^J entitled to land. It is fair and legal to presume that the same name identifies the same person, until the contrary appears; for names are used for the purpose of identifying '‘‘dwiduals, to whom they are attached. It bas beeu truly observed at the bar, that tbe appellee has not ventured to deny that Isaac Larue, to whom tbe first certificate was _ranje(j vvus tbe same person, who obtained the last; and although there might have been more ot the same name, It does not necessarily follow that one of these others obtained tbe first certificate. But vye have looked into tbe testimony and we find no proof of any but one Isaac Larue, in Christian county, or indeed elsewhere, at tbe date of the certificate; so that we must presume that he is the person who obtained tbe first certificate as well as the last; unless we should first presume the existence of another, and then that ha was the person who obtained the first certificate. Such a presumption would be wholly unnatural and without warrant. We must then consider whether the suggestion in the replication of the appellee, that the adjudication of the county court is conclusive, can avail him in this enquiry. It has been decided with regard to settlement claims, granted by commissioners under the statutes of Virginia, relative to the vacant lands in this country, that the certificate of that court was conclusive for some purposes and in some cases. This doctrine has been peculiarly applied in cases, where a subsequent claimant attempted to shew, that the person to whom a settlement was granted with a preemp *205 tion appendant, had no right to the grant, on account of his not having actually settled at the date required by law, in the case of an actual settler; or that he had not resided a sufficient length qí time, or raised a crop of corn at a proper period in the case of a villager. By such an attempt, the decision of the commissioners was again set afloat, and laid «pen to full enquiry, and the person who had proved himself entitled to land somewhere, if he obtained any, might, by subsequent claimants, be compelled to prove his right anew on every contest, so that he could have gained nothing by tbe decision of the commissioners in bis favor. The inconvenience of such doctrine was early seen, and the certificates of commissioners were held conclusive on these points, and we are not aware of any decision since tbe case of Kenton vs. M Connell, Hughes 134, where less credit has been attached to these certificates, whenever they came in conflict with subsequent claimants of the same land. In all such cases, tbe certificates have been held conclusive evidence that the parlies holding them had complied with the prerequisites of the law, and that they lyere entitled to the quantity of land, and the contest then generally rested on the question, whether the holder had complied with the subsequent requisites, in giving location to his claim.
The adjudi-count”5 °^*†8 granting certificates to jy t0 certa;„ purposes, for ■ jNj™ certi. t° the same per °"» an a<1-⅛⅜⅞¾&⅛® last ⅛ void,
But we are aware of no case which goes so far as to say, that the decision of the commissioners was conclusive the holder’s favor, so as to give him two or more claims, or that if they did grant a second, a claimant of any churac-ter in contest with him, should be precluded from shewing, that they had granted the first. If every certificate, out of twenty, granted for as many different parcels of land, to one individual, should, by its bare production, preclude an enquiry, whether the right had been previously satisfied by former certificates, it would then follow, that the grant of the commissioners once given iu favor of an individual, did not exhaust their authority; or-if it did, and their subse-quenl grants were void, there would be no possibility of proving or shewing that they were so, except by prior legal claimants, who could succeed without the necessity of doing so. Large quantities of land by this means would be kept from subsequent appropriation, by the void aets of the agents of government, after their authority was at an end. We are therefore satisfied that Isaac Larue, to whem the two certificates in question were granted, must be takers *206 from this record, lo be one and the same person, and that the production of the last certificate by the county court ought not to preclude the appellant from shewing, by another certificate, of equal grade of evidence, and prior in its date, that a previous certificate tvas granted The question then remains, does the first certificate destroy the equity of the latter; or, in other words, were the county courts au-thorised to grant more than one certificate of four hundred sorts to the same person? For we conceive that it clearly follows, if they could grant but one, that the second was wholly without authority, and the grant itself is therefore void.
In granting a new and extra >rdin iry power, the question is not what pow er is denied, in determining the extent oF jut-is-die ion, >ut what ⅛ given.
It has been urged in argument, that there is no restrict tro,n in the law on the county courts, that they should grant but one to the same individual, and that if they had grant, ed forty, they were not prohibited from doing so. This has led us to a more close examination of the act which au-thorised the granting these certificates. It is an act of December 20, 18OO, 2 Lilt. 420. It is true, that the county courts are not therein told, totidem verbis, that they should not issue more than one certificate to the same person. But it will be perceived at once, that the power delegated to the county courts by this act, was extraordinary. They did not previously possess it by common law or any other statute. The question then is, not wbat power is restricted, but what is given? Instead of the appellee’s be, ing secure in relying on the want of restriction, the appellant may more securely rest on the demand for proof of authority. For the bare delegation of authority to grant one certificate, excludes the idea of more; and the leave to an individual to improve, occupy and hold one quantity of four hundred acres, negatives his permission to take more. Besides, it is evident from the whole tenor of the act, that the legislature did not intend to bring the vacant lands of the State into full market. Only one class of purchasers, to wit, the actual settlers, were allowed to buy, and they only four hundred acres each. If it is necessary to rely oti any expressions of the act to fortify this construction, many of that character may be found in it. The purchaser must not only settle, but reside on the land. Those who bad acquired two hundred acres under former laws, were '■'■autho-rised to appropriate under this act no more than two hundred acres,” to make them equal to the cia-mants who should arise under this act. Each settler under this act *207 was compelled to reside on the land two whole years, be* fore he could obtain the patent; and during that period no transfer was lawful. These, tvitb other provisions, totally precludes the idea of change of residence and acquisition thereby of other claims, and different and other rights, and shew conclusively, that the authority given was confined to séttled and permanent residence, and even they must be satisfied with the sole and single quantity of four hundred acres, leaving the residue to other settlers, or the future disposition of the legislature, in case it was not occupied; and thereby the legislature intended, as the preamble of the act expresses it, to “add to the population, wealth and consequence of the state” by increasing the number of her land holders residing thereon. We therefore conceive that the county court of Christian had no authority to grant but one certificate of four hundred acres to Isaac Larue, and that the grant of the second one, for different land, set up by the appellee, was without authority, and void
We have, in deciding this case, made use of the doctrines adopted and established by this court, with regard to commissioners’ certificates granted by the commissioners Under the laws of Virginia, which gave birth to settlements and pre emptions. And the powers vested in thecomrais-sioners then, and those by the act in question, to the county courts, are nearly, if not precisely, equal and similar; so that the same principles ought to govern both eases. By locking into the decisions under the ancient or former law, o e will be found in Hughes 41, Briscoe vs. Speed, which has never been overturned, and which corresponds with the present case. In that case it was decided, that a subsequent certificate for settlement was vilious or void, where it was shewn that a previous one had been grantedlo the same claimant. So that the opinion now rendered is supported by precedent.
Having come to this conclusion, we have not thought it necessary to respond to the other objections taken to thi$ claim, such as the total absence of a warrant from the register, and a location with the surveyor, which were required by the original act under which the claim was granted — and the arguments arising from its call for the post -oak, and its peculiar phraseology in directing its figure after leaving the post oak. Nor have we thought it necessary to notice the objections made to the legality of the appellant’s claim, in t{ie bill and amended bill of the appellees *208 such as tbe fact allegad, that the seminary under whom the nppellant claims, had obtained more land than was allowed by law, and that tbeir agent had knowledge of the appel-lee’s claim, with various other charges of fraud and malpractice in its origin. We shall however remark, that if most of these objections could avail tbe appellee, they might have been used in a court of law on the trial of the ejectment, in which it has been decided, as the bill admits, t hat tbe appellant has the eldest legal title. It is sufficient for him, if he has this, until the appellee shall shew that he holds a valid claim prior in date to that legal estate.
Hardin, Crittenden, & Bibb for appellants. Pepe, contra.
The decree of the court below, must be reversed with costs, and the cause remanded with directions to that court to dissolve the appellee’s injunction* and dismiss his bill with costs.